# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PINE GROVE MANUFACTURED HOMES, | CIVIL ACTION NO. 3:08-CV-1233 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, | |
| Defendant, | |
| INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, | |
| Third-Party Plaintiff, | |
| v. | |
| CHAMBERLIN & REINHEIMER INSURERS, INC., | |
| Third-Party Defendant. | |

## **MEMORANDUM**

Presently before the Court is Plaintiff Pine Grove Manufactured Homes, Inc.'s ("Pine Grove") Motion for Summary Judgment (Doc. 79), Defendant Indiana Lumbermans Mutual Insurance Group's ("ILM") Motion for Summary Judgment (Doc. 83), and Third-Party Defendant Chamberlin & Reinheimer Insurers, Inc.'s ("CRI") Motion for Summary Judgment (Doc. 75). For the reasons stated below, this Court will grant Pine Grove's Motion for Summary Judgment, grant CRI's Motion for Summary Judgment, and grant in part and deny in part ILM's Motion for Summary Judgment.

## FACTUAL BACKGROUND

Pine Grove Manufactured Homes, Inc. ("Pine Grove") operates a facility that produces pre-fabricated buildings. (Compl. ¶ 6, Doc. 1.) On June 28, 2006 the facility was flooded when a nearby creek overflowed, causing damages to Pine Grove's building, materials and inventory. (*Id.* at ¶¶ 8-9.) At the time of the flood, Pine Grove had two insurance policies covering the facility, one from Harleysville Mutual Insurance Company and a commercial policy through ILM. (*Id.* at ¶¶ 10-12.) Pine Grove's loss was estimated to be three million, two hundred ninety-three thousand, nine hundred ninety-three dollars and thirty-eight cents ($3,293,993.38). (*Id.* ¶ 17.) Pine Grove submitted its claim under the Harleysville policy and, after the deductible was subtracted, received a payment of one million, one hundred sixty-five thousand, seven hundred fifty-one dollars and seventy cents ($1,165,751.70). (*Id.* ¶ 18.) Pine Grove then submitted the unpaid portion of the claim to ILM, who deducted its five hundred thousand dollar deductible ($500,000.00) and then paid one million, six hundred twenty-five thousand, five hundred fourteen dollars and sixty-eight cents ($1,625,514.68).

## PROCEDURAL BACKGROUND

On June 28, 2007, Pine Grove filed its Complaint, alleging Breach of Contract (Count I) and Bad Faith in violation of 42 PA. CONS. STAT. ANN. § 8371 (Count II) against ILM and the ILM Group. Pine Grove alleges that it was permitted to apply the proceeds from its Harleysville policy to the deductible under the ILM policy, and that ILM is breaching its policy with Pine Grove by refusing to allow Pine Grove to do so. Pine Grove further alleges that ILM

2

acted in bad faith by willfully and maliciously 1) failing to promptly and fairly settle its claim with Pine Grove, 2) compelling Pine Grove to institute litigation, 3) attempting to settle Pine Grove's claim for less than a reasonable amount under the policy, 4) advising Pine Grove that the Harleysville proceeds would be applied to satisfy the ILM deductible, 5) failing to advise Pine Grove until four (4) months after the flood that the Harleysville Proceeds would not, in fact, be applied to the ILM deductible, 6) failing to pay the insurance proceeds due to Pine Grove under the ILM policy, and 7) failing to adjust Pine Grove's claim fairly.

This Court granted ILM's Motion for Leave to File a Third-Party Complaint. (Doc. 18.) On January 26, 2009, ILM filed its Third-Party Complaint seeking Indemnification and/or Contribution from CRI. (Doc. 24.) CRI then filed a Motion to Strike or, in the alternative, Dismiss ILM's Third-Party Complaint on March 25, 2009. (Doc. 28.) On October 23, 2009, this Court denied CRI's Motion to Strike, granted CRI's Motion to Dismiss ILM's indemnification claim, and denied CRI's Motion to Dismiss ILM's contribution claim. (Doc. 38.) On a Motion for Reconsideration, this Court granted CRI's Motion to Dismiss the Third-Party Complaint. (Doc. 47.) ILM then filed an Amended Third Party Complaint against CRI for contribution on February 5, 2010. (Doc. 53.) On May 5, 2010,. ILM filed an Amended Answer which included a counterclaim against Pine Grove for breach of contract. (Doc. 68.) Pine Grove, ILM, and CRI then each filed Motions for Summary Judgment. (Docs. 79. 83, and 75.) The instant Motions have been fully briefed and are ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to

3

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56©.  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to

refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## **DISCUSSION**

**I.     Pine Grove's Motion for Summary Judgment on its Breach of Contract claim**

Pine Grove's Motion for Summary Judgment on its insurance coverage claim will be granted. Pine Grove's insurance policy with ILM clearly states that the ILM policy is an excess policy rather than an independent or "stand alone" policy, and the deductible can therefore be funded by Pine Grove's primary NFIP flood insurance policy as per standard industry practice.

The interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). A court must give effect to the plain language of the insurance contract read in its entirety. *Reliance*, 121 F.3d at 901. When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind Co.*, 469 A.2d at 566). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236,

1239 (Pa. Super. 2001) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1985)).  However, the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

The central issue in the breach of contract claim is whether or not Pine Grove's insurance policy with ILM is excess insurance, over and above their NFIP policy, as Pine Grove contends, or a stand-alone policy, as ILM contends.  If it is an excess policy, industry practice would allow Pine Grove to use the NFIP policy to fund the $500,000 deductible on the ILM policy.

The language of the contract is unambiguous.  AAIS Form COP-223 ED. 2.0 Flood Endorsement expressly provides the following:

> **3. Excess Insurance and Other Insurance –** "You" may purchase insurance in excess of the amount(s) stated in the Scheduled Flood Endorsement." "You" may also use insurance under this policy as *excess coverage* over another policy.
>
> (Pl. Ex. M at 69) (emphasis added).

In denying that Pine Grove's policy is excess insurance, ILM has repeatedly pointed to the "Insurance Under More than One Policy" section of the policy.  This section, found at AAIS Form COP-100 ED. 2.0, states:

> **5. Insurance Under More Than One Policy –** "You" may have another policy subject to the same plan, terms, conditions, and provisions as this policy.  If "you" do, "we" will pay "our" share of the covered loss.  "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.
>
> (Pl. Ex. M at 54).

However, ILM's reliance on this section is misplaced.  This section is explicitly

6

deemed irrelevant by the final sentence of the 'Excess Insurance' clause of AAIS Form COP-223 ED. 2.0. That sentence states that:

> Such excess or other insurance *shall not be considered in applying Insurance Under More Than One Policy* nor shall it be considered in the application of any pro rata or apportionment provision.
>
> (Pl. Ex. M at 68) (emphasis added.)

The plain language of the contract clearly states that Pine Grove held a policy for excess coverage at the time of the flood. This interpretation of the policy concurs with that given by ILM's own head claims adjustor, Randall Thompson – the person who, according to the underwriter who wrote the policy, Michael Milius, is responsible for determining the extent of the policy's coverage. In a Claims Log entry dated August 15, 2006, Thompson wrote, with regard to Pine Grove's coverage: "Our policy is *excess* over the NFIP coverage." (Pl. Ex. G at 32) (emphasis added.) Thompson also wrote, in a report subsequent to the June 28, 2006 flood, dated July 27, 2006, that: "ILM's policy is *secondary* to the National Flood Program." (Pl. Ex. G at 34) (emphasis added.)

Since the plain language of the insurance contract clearly states that the policy Pine Grove purchased was for excess coverage, this Court will give effect to that language and grant Pine Grove's Motion for Summary Judgment on its breach of contract claim against ILM.

## II. CRI's Motion for Summary Judgment

CRI's Motion for Summary Judgment on ILM's contribution claim will be granted. This Court previously held that CRI could be held liable for contribution with respect to the

7

bad faith claim against ILM. However, that was on a Motion to Dismiss, where all of ILM's allegations had to be taken as true. Furthermore, this Court has now determined that ILM has in fact breach its contract with Pine Grove by refusing to allow them to fund the deductible on their policy with ILM with the proceeds from their NFIP policy. A "joint tortfeasor" analysis is not required here. In determining that ILM breached its contract with Pine Grove, this Court, by the same token, has necessarily also determined that CRI was not negligent in procuring the flood insurance policy that Pine Grove requested, since this Court has found that the insurance policy CRI secured for ILM *was* an excess policy, the deductible of which could be funded with the proceeds from the primary NFIP policy. Simply put, since CRI has not committed any tort, there is no theory under which they could be categorized as a "joint tortfeasor."

**III.    ILM's Motion for Summary Judgment on Its Counter-Claim against Pine Grove**

ILM's Motion for Summary Judgment on its counter-claim against Pine Grove will be granted with respect to the sixty-thousand six-hundred and sixty-eight dollars and sixty-eight cents ($68,668.68) Pine Grove received from ILM for damages to two three-walled buildings in the June 28, 2006 flood.

Pine Grove has admitted that it received payment for the damage to these two buildings from both ILM *and* from Harleysville under its NFIP policy. Although such a double recovery is in clear violation of the 'Recoveries' section of Pine Grove's policy with ILM, AAIS Form COP-100 ED. 2.0, it is Pine Grove's contention that it is entitled to keep both payments in order to *mitigate* its damages stemming from ILM"s breach of the insurance contract.

8

To marshal support for this stance, Pine Grove points to *Rector, Wardens & Vestrymen of St. Peter's Church in the City of Philadelphia v. Am. Nat. Fire Ins. Co.*, 97 Fed. Appx. 374 (3d Cir. 2004). Pine Grove's reliance on that case is unavailing however, owing to the stark factual differences between that case and the instant suit. In *Rector*, the plaintiff, after failing to be provided with legal counsel under an insurance policy which contained a duty to defend provision, sought its own counsel and then sued its insurer for the legal fees it had incurred. In that case, the Third Circuit found the plaintiff had a right to mitigate its damages stemming from the insurer's breach of its duty to defend by hiring its own legal counsel.

In this case however, while this Court has found ILM to be in breach of its contract with Pine Grove, and Pine Grove clearly had a right to mitigate its losses, this right did not extend to a double-recovery for losses it sustained in the June 28, 2006 flood. In *Rector*, plaintiff simply had no choice but to secure its own counsel since it had been named in a complaint. Here, however, while there was likely financial hardship stemming from ILM's breach of contract, it was not necessary for Pine Grove to keep the money it had received from ILM after it collected under its NFIP policy for the damage to the two three-sided structures. Furthermore, double-recovery is impermissible under virtually any insurance contract, and ILM's breach of contract does not provide Pine Grove a basis for such relief.

This Court now addresses the "additional recovery" Pine Grove allegedly received from its damaged finished or works-in-progress mobile housing units. This Court finds that there are sufficient material facts in dispute to prevent it from granting ILM summary judgment with respect to the approximately fourteen-thousand three-hundred and fifty-one

9

($14,351.00) dollars Pine Grove allegedly received above and beyond the one-hundred and twenty-five thousand ($125,000.00) "salvage credit" ILM gave it for the five damaged work-in-progress and finished mobile home units. The issue of what was agreed to regarding the terms of the "salvage credit" at the October 26, 2006 meeting cannot be resolved by this Court with the record it has before it. While Pine Grove claims the parties agreed that Pine Grove could sell the units at any price it could get for them and keep any difference between the sale prices and the "salvage credit," ILM contends that the understanding between the parties was that any excess was to be remitted to ILM. Given that the depositions conflict with respect to this agreement and further testimony would be needed to resolve the issue, this Court will deny ILM's Motion for Summary Judgment with this part of its counter-claim.

## **CONCLUSION**

For the reasons stated above, this Court will grant Pine Grove's Motion for Summary Judgment, grant CRI's Motion for Summary Judgment, and grant in part and deny in part ILM's Motion for Summary Judgment. While ILM's Motion for Summary Judgment on Pine Grove's Breach of Contract claim is denied, ILM's Counter-Claim against Pine Grove is partially granted. An appropriate order follows.

 10/21/10                                                                                       /s/ A. Richard Caputo
Date                                                                                             A. Richard Caputo
                                                                                                 United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PINE GROVE MANUFACTURED HOMES,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,<br><br>Defendant.<br><br>INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>CHAMBERLIN & REINHEIMER INSURERS, INC.,<br><br>Third-Party Defendant. | CIVIL ACTION NO. 3:08-CV-1233<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this ___21st___ day of October, 2010, **IT IS HEREBY ORDERED** that:

(1) Plaintiff Pine Grove Manufactured Home's Motion for Summary Judgment on its breach of contract claim is **GRANTED.**

(2) Third Party Defendant Chamberlin & Reinheimer Insurers' Motion for Summary Judgment is **GRANTED.**

(3) Defendant Indiana Lumbermens Mutual Insurance Company's Motion for Summary Judgment is **GRANTED in part and DENIED in part** as follows:

    (A) The Motion is **GRANTED** with respect to its counter-claim against Pine Grove for breach of contract.

(B) The Motion is **DENIED** with respect to Pine Grove's claim against it for breach of contract.

    /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge